**UNITED STATES of America**

v.

**Mary Sue HUBBARD et al.**

**Crim. No. 78–401.**

United States District Court, District of Columbia.

July 30, 1979.

See also, D.C., 493 F.Supp. 206.

John B. Kuhns, Kevin T. Baine, Williams & Connolly, Washington, D. C., for Timothy S. Robinson.

Leonard B. Boudin, Rabinowitz, Boudin & Standard, Michael Lee Hertzberg, New York City, for defendant Hubbard.

Philip J. Hirschkop, Leonard S. Rubenstein, Geraldine R. Gennet, Hirschkop & Grad, P.C., Alexandria, Va., for defendants Heldt & Snider.

Roger E. Zuckerman, Roger C. Spaeder, Lawrence A. Katz, Zuckerman, Spaeder & Taylor, Washington, D. C., for defendants Willardson & Weigand.

Michael Nussbaum, Ronald G. Precup, Nussbaum & Owen, Washington, D. C., for defendants Hermann & Raymond.

John Kenneth Zwerling, Jonathan Shapiro, Zwerling & Shapiro, Alexandria, Va., for defendant Wolfe.

Leonard Koenick, Washington, D. C., for defendant Thomas.

Carl S. Rauh, U. S. Atty., Raymond Banoun, Timothy J. Reardon, Judith Hetherton, Steven C. Tabackman, Asst. U. S. Attys., Washington, D. C., for the United States.

### MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the motion of Timothy S. Robinson, a reporter for *The Washington Post*, to quash a subpoena *duces tecum* issued upon application of the defendants in this case. The subpoena commands the reporter to appear to testify at the suppression hearing in this case and to bring with him

> any and all notes, writings, and materials of any kind pertaining to: the Church of Scientology, the searches of the Church of Scientology premises on July 8, 1977, the documents seized from the premises of the Church of Scientology on July 8, 1977, etc.; any and all books, outlines of books or other writings regarding the searches of the Church of Scientology on July 8, 1977, including any material received from anyone else regarding the searches of the Church of Scientology premises on July 8, 1977.

The reporter moves to quash the subpoena on the ground that it seeks the disclosure of material and information that is protected by the first amendment.[1] For the reasons that follow, the Court quashes the subpoena.

---

1. The reporter also contends that the defendant Wolfe, whose attorney signed the subpoena, has no standing in this suppression hearing, and that the subpoena violates a protective order issued by the United States District Court for the Central District of California. The Court rejects both of these arguments. First, the subpoena was issued on behalf of all of the defendants. Second, the protective order cannot bind the defendants in this case, none of whom was party to the California proceeding.

## I. BACKGROUND.

The Court is currently conducting a hearing on the motion of the defendants to suppress evidence seized·from two Church of Scientology premises in Los Angeles, California on July 8, 1977. On the day before the search, officials of the Federal Bureau of Investigation (hereinafter, "FBI") and Assistant United States Attorneys for the District of Columbia conducted a briefing to prepare the agents on the nature of their duties the following day. The defendants contend that it is crucial for them to obtain knowledge of the substance of the presearch briefing. Further, according to the defendants, the reporter is an indispensable witness on this subject.

According to the defendants, the reporter has written a proposal for a book concerning the Church of Scientology which contains a detailed discussion of the FBI searches in Los Angeles on July 8, 1977, and the briefings which preceded them. In support of this contention, the defendants have filed with the Court a copy of what purports to be the first five pages of the reporter's book proposal. In addition, the defendants rely on a cover page entitled "About the author," which provides in part:

> This would be his first book, a nonfiction work about the federal government's investigation into the Church of Scientology. Robinson has numerous major sources in several government agencies, contacts with defectors from the church, and contacts with current church members from whom he would receive cooperation.

It is the defendants' contention that the reporter is indispensable because his proposal purports to be a nonfiction account based, at least in part, on government sources.

According to the defendants, the first chapter of the book deals directly with the details of the manner in which the government planned to execute the warrants and the briefings of the agents. The defendants have included excerpts which they contend demonstrate that the reporter has accurate inside information of vital occurrences during the briefings.

Finally, the defendants contend that their attempts to obtain information with respect to the briefings have been frustrated. According to the defendants, the FBI agents called by the defendants have been uniformly vague in recalling particulars of the briefing, only one agent took notes, no recording of the briefing was made, and the Court has quashed subpoenas of two of the participants—namely, Assistant United States Attorneys Banoun and Schuelke. Accordingly, the defendants contend that they have exhausted alternative sources for the information, and must have access to the reporter and his notes.

## II. NEWS GATHERING BY THE PRESS IS PROTECTED BY A QUALIFIED FIRST AMENDMENT PRIVILEGE.

The United States Supreme Court confronted the issue of a reporter's privilege on only a single occasion: *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The issue before the Court in *Branzburg* was whether requiring newsmen to appear and testify before state or federal grand juries abridges the freedom of speech and press guaranteed by the first amendment. The Court held that it did not. However, the vote which determined the outcome in *Branzburg* was cast by Justice Powell, and his concurring opinion has inspired the courts to engage in a case-by-case balancing of interests in order to determine whether a reporter will be required to testify. *See Bursey v. United States*, 466 F.2d 1059, 1083 (9th Cir. 1972); *Brown v. Commonwealth*, 214 Va. 755,.204 S.E.2d 429 (Va.1974); *State v. St. Peter*, 315 A.2d 254, 256 (Vt.1972); *Zelenka v. State*, 83 Wis.2d 601, 266 N.W.2d 279, 287 (Wisc.1978).

Justice Powell's concurring opinion in *Branzburg* provides, in part:

> If a newsman believes that the grand jury investigation is not being conducted, in good faith he is not without remedy. Indeed, if the newsman is called upon to give information bearing only a. remote and tenuous relationship to the subject of

the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.

Branzburg v. Hayes, 408 U.S. 665, 710, 92 S.Ct. 2646, 2671, 33 L.Ed.2d 626 (1972) (Powell, J., concurring). Accordingly, the reporter's privilege will be upheld unless the information sought is necessary to a just resolution of the case, and it cannot be obtained by alternative means. See Carey v. Hume, 160 U.S.App.D.C. 365, 492 F.2d 631 (D.C.Cir.1972), cert. dismissed, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974).

██ The defendants contend that the reporter's privilege does not apply to this case because Mr. Robinson has been subpoenaed regarding a book he is writing for his own personal gain and not for The Washington Post. The Court must reject any distinction on such grounds. First, the fact that the news gathering is conducted for financial gain is irrelevant. Reporters normally receive salaries for their news gathering efforts, Such financial gain does not taint the importance of the services to our cherished first amendment goals. Second, the reporter's privilege must encompass all news gathering efforts, not simply those for newspapers: "The press in its historic connotation comprehends every sort of publication which affords a vehicle of information and opinion." Lovell v. City of Griffin, 303 U.S. 444, 452, 58 S.Ct. 666, 669, 82 L.Ed. 949 (1938).

Finally, the defendants contend that the proceedings in New York Times v. Jascalevich, 439 U.S. 1301, 98 S.Ct. 3058, 3060, 58 L.Ed.2d 9 (1978), have somehow modified the Supreme Court's decision in Branzburg. The refusal of Justices White and Marshall to stay the order of the Supreme Court of New Jersey was plainly not a ruling on the merits. Furthermore, Justice White indicated his belief that the Court had never ruled on the issue whether "the obligation to obey an otherwise valid subpoena served on a newsman is conditioned upon the showing of special circumstances." 98 S.Ct. at 3060. In the absence of a definitive resolution of this issue, the Court is not bound to follow the precedent of the Supreme Court of New Jersey in In re Farber, 78 N.J. 259, 394 A.2d 330, cert. denied, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978).

Accordingly, the reporter is protected from the subpoena power of a criminal defendant unless the information is necessary to a fair hearing and there are no alternative avenues for access to the information in the reporter's possession.

## III. THE REPORTER'S INFORMATION IS AVAILABLE FROM ALTERNATIVE SOURCES AND IS NOT NECESSARY TO A FAIR HEARING.

██ The information the defendants seek from the reporter concerns a briefing which was attended by nearly 100 FBI agents. Any information in the reporter's possession would be merely hearsay provided by one of the participants to the reporter. The Court has already heard testimony from numerous eyewitnesses to the briefing. The Court has also heard testimony from an FBI agent who testified with the assistance of notes made during the briefing and another agent who testified from notes made within a short period of the briefing. Any testimony the reporter could offer would be merely cumulative and less than the best evidence available. There plainly are alternative means to obtain information about the briefing and the testimony of the reporter would be far less than necessary to a fair resolution of this case. Accordingly, the motion of the reporter to quash is granted.