477 A.2d 776

**WBAL–TV DIVISION, THE HEARST CORPORATION**

v.

**STATE of Maryland.**

**No. 8, Sept. Term, 1984.**

Court of Appeals of Maryland.

Per Curiam Order April 6, 1984.

Opinion July 12, 1984.

234

Theodore Sherbow, Baltimore (Peter A. Cotorceanu, Henry R. Abrams, Michael P. Smith and Weinberg & Green, Baltimore, on the brief), for appellant.

Douglas D. Connah, Jr., Elizabeth C. Honeywell and Venable, Baetjer & Howard, Baltimore, on the brief, amicus curiae for Westinghouse Broadcasting and Cable, Inc.

Peter F. Axelrad, Robert B. Levin, David E. Beller, Thomas M. Wood, IV and Frank, Bernstein, Conaway & Goldman,

and William L. Reynolds, Baltimore, of counsel, on the brief, amicus curiae for WMAR, Inc.

Kathleen Howard Meredith, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra O'Connor, State's Atty. for Baltimore County and Dana M. Levitz, Asst. State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

## ORDER

PER CURIAM.

For reasons to be stated in an opinion later to be filed, it is this 6th day of April, 1984

ORDERED, by the Court of Appeals of Maryland, that the order of the Court of Special Appeals of Maryland granting the motion to stay the contempt order of the Circuit Court for Somerset County be, and it is hereby, vacated as of 4:00 p.m. Monday, April 9, 1984 and the judgment of the Circuit Court for Somerset County is hereby affirmed; and it is further

ORDERED that the mandate shall issue forthwith, costs to be paid by the appellant.

## OPINION

MURPHY, Chief Judge.

At issue in this case is whether the trial court erred by refusing to quash a summons issued to a television station to produce the unbroadcast portions of a video taped interview with a criminal defendant for possible use at his trial. By per curiam order dated April 6, 1984, we affirmed the judgment below. We now give our reasons for that determination.

## I.

On April 28, 1983, Scott Piechowicz and his sister-in-law, Susan Kennedy, were murdered at the Warren House Motel in Pikesville, Maryland. A federal indictment was subsequently returned against Anthony Grandison on May 27, 1983, charging *inter alia* that he solicited and procured another to kill Piechowicz and Piechowicz' wife Cheryl to prevent them from testifying against him at his pending federal trial on drug charges. On June 30, 1983, Grandison was indicted by a Baltimore County Grand Jury for first degree murder in connection with the murders of Scott Piechowicz and Susan Kennedy.

Grandison was convicted in the United States District Court for the District of Maryland on November 3, 1983 of conspiring to deprive Piechowicz and his wife of their constitutional rights—the conspiracy having resulted in the contract murder of Piechowicz, and mistakenly, Susan Kennedy. Dana Levitz, an Assistant State's Attorney for Baltimore County, acted as Special Assistant United States Attorney and actively participated in the federal trial.

On November 17, 1983, Grandison, in writing, granted "complete authorization to be interviewed by the news media." Thereafter, on November 30, 1983, Linda Mann, a reporter for WBAL–TV (WBAL), conducted a video taped interview with Grandison at his place of incarceration. The video tapes were subsequently edited for broadcast and short excerpts (approximately ten percent of the total interview) were broadcast that evening on the local TV news.

On December 9, 1983, the State's Attorney for Baltimore County, acting through Levitz, requested that a summons be issued to the custodian of records of WBAL to produce the video taped interview between Mann and Grandison, including the "outtakes," *i.e.*, those unbroadcast segments of the interview. WBAL moved to quash the summons, contending that as a news organization it enjoyed a quali-

fied first amendment and state constitutional privilege [1] against being compelled to testify or to produce information about news gathering activities or the editorial process. The qualified privilege, according to WBAL, could be overcome only by a three-fold showing of need by the State: (1) that the information sought by the State was relevant and material to the trial and admissible in evidence; (2) that the information sought by the State was essential to a determination of guilt or innocence of the accused; and (3) that the information was not otherwise available to the State from alternative sources. It was WBAL's position that because Levitz had acted as Special Assistant United States Attorney in the federal case, and was participating in the state prosecution, all the facts necessary to a successful state prosecution were available to the State and, therefore, the requested outtakes were not essential to a determination of Grandison's guilt or innocence.

At the hearing on February 27, 1984, in the Circuit Court for Somerset County, to which the case had been removed, the State made clear that it sought only the video tapes of the verbatim statements made by Grandison to Mann. It argued that WBAl had no qualified first amendment or state constitutional privilege to refuse production of the video taped portions which it sought for use at Grandison's trial.

WBAL furnished the trial court with a verbatim transcript of the entire interview which the court reviewed *in camera*. It concluded that the interview related to four areas: (1) Grandison's past record, (2) his family background, (3) his federal prosecution, and (4) the state prosecution pending before the court. The court found that the interview was a voluntary one given without any promise of

---

**1.** Article 40 of the Maryland Declaration of Rights provides:
"That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege."

confidentiality. For purposes of ruling on the motion to quash, the court accepted WBAL's claim of qualified privilege. It determined, however, that the three-fold test proposed by WBAL had been satisfied and consequently it denied the motion to quash. WBAL refused to comply with the summons and was held in contempt. It appealed to the Court of Special Appeals. We granted certiorari prior to decision by the intermediate appellate court to consider the issue of public importance involved in the case.

## II.

The only United States Supreme Court decision to discuss the news reporter's privilege is *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The issue in *Branzburg,* as stated by the Court, concerned "the obligation of reporters to respond to grand jury subpoenas as other citizens do and to answer questions relevant to an investigation into the commission of crime." *Id.* at 682, 92 S.Ct. at 2657. The Court emphatically refused to create any special exceptions for news reporters summoned to give evidence in legal proceedings. It said:

"It is clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability. Under prior cases, otherwise valid laws serving substantial public interests may be enforced against the press as against others, despite the possible burden that may be imposed. The Court has emphasized that '[t]he publisher of a newspaper has no special immunity from the application of general laws....' *Associated Press v. NLRB,* 301 U.S. 103, 132–133 [57 S.Ct. 650, 655–656, 81 L.Ed. 953] (1937)."

*Id.* at 682–83, 92 S.Ct. at 2657–58. The Court continued:

"We are asked to create another [privilege] by interpreting the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy. This we decline to do.... On the records now before us, we perceive no basis for holding that the public interest in law enforce-

ment and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial."

*Id.* at 690–91, 92 S.Ct. at 2661–62 (footnote omitted). The Court rejected the argument that compelled disclosure of information obtained from confidential sources would deter informants from revealing vital information to the press in the future. It stated:

"[W]e cannot accept the argument that the public interest in possible future news about crime from undisclosed, unverified sources must take precedence over the public interest in pursuing and prosecuting those crimes report-ed to the press by informants and in thus deterring the commission of such crimes in the future."

*Id.* at 695, 92 S.Ct. at 2664. The reporters in *Branzburg* argued that the State must make a preliminary showing, similar to the one urged by WBAL in this case, before the reporters may be forced to turn over the evidence. They contended that

"the reporter should not be forced either to appear or to testify before a grand jury or at trial until and unless sufficient grounds are shown for believing that the re-porter possesses information relevant to a crime the grand jury is investigating, that the information the re-porter has is unavailable from other sources, and that the need for the information is sufficiently compelling to override the claimed invasion of First Amendment inter-ests occasioned by the disclosure."

*Id.* at 680, 92 S.Ct. at 2656. The Court flatly rejected the notion that any such preliminary showing was necessary:

"predicting in advance when and in what circumstances [reporters] could be compelled to [give evidence] would be difficult. Such a rule would also have implications for

the issuance of compulsory process to reporters at civil and criminal trials and at legislative hearings."

*Id.* at 702, 92 S.Ct. at 2667. The Court cautioned, however, that

"news gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment. Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification. Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth."

*Id.* at 707–08, 92 S.Ct. at 2669–70 (footnote omitted). In his concurring opinion, Justice Powell emphasized this point:

"If a newsman believes that the grand jury investigation is not being conducted in good faith he is not without remedy. Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered. The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions."

*Id.* at 709–10, 92 S.Ct. at 2670–71 (footnote omitted).

*Tofani v. State,* 297 Md. 165, 465 A.2d 413 (1983) involved a situation similar to that in *Branzburg.* Tofani had written a series of articles about sexual assaults in the Prince

George's County Jail. Names of both assailants and victims were published in the articles. Tofani was summoned to appear as a witness before the Grand Jury to testify about whether the facts set forth in the articles were accurate. She moved to quash the summons relying on both the Maryland reporters' shield law and a First Amendment testimonial privilege. We rejected both arguments. We held that Tofani had waived the privilege created by the Maryland shield law, Maryland Code (1984 Repl.Vol.), § 9–112 of the Courts and Judicial Proceedings Article, by disclosing the identity of her news sources in the articles.[2] We also ruled that under the *Branzburg* decision, Tofani had no First Amendment privilege not to testify before the grand jury.

■ Relying on the Supreme Court's decision in *Branzburg*, cases in other jurisdictions have rejected claims of a constitutional privilege by reporters called upon to provide evidence in civil and criminal trials. *See Gagnon v. Dist. Court In & For Cty. of Fremont*, 632 P.2d 567 (Colo.1981); *Georgia Communications Corp. v. Horne*, 164 Ga.App. 227, 294 S.E.2d 725 (1982); *Caldero v. Tribune Pub. Co.*, 98 Idaho 288, 562 P.2d 791 (1977), *cert. denied*, 434 U.S. 930, 98 S.Ct. 418, 54 L.Ed.2d 291 (1977); *Com. v. Corsetti*, 387 Mass. 1, 438 N.E.2d 805 (1982); *Newburn v. Howard Hughes Med. Inst.*, 95 Nev. 368, 594 P.2d 1146 (1979); *Matter of Farber*, 78 N.J. 259, 394 A.2d 330 (1978), *cert. denied*, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978); *Ammerman v. Hubbard Broadcasting, Inc.*, 91 N.M. 250,

---

2. Section 9–112 provides:
   "A person engaged in, connected with, or employed on a newspaper or journal or for any radio or television station may not be compelled to disclose, in any legal proceeding or trial or before any committee of the legislature or elsewhere, the source of any news or information that was obtained by the person for purposes of publication in a newspaper or journal or for purposes of dissemination by a radio or television station where the person is engaged, connected with or employed."
   The shield law is not implicated in the instant case because disclosure of sources is not an issue.

572 P.2d 1258 (N.M.App.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).[3]   On the other hand, as we observed in *Tofani, supra,* 297 Md. at 186–88, 465 A.2d 413, a significant number of federal and state courts have indicated that *Branzburg* does create a qualified privilege for members of the news media.   These courts have based the existence of the qualified privilege on a variety of sources including the First Amendment, *e.g., Zerilli v. Smith,* 656 F.2d 705 (D.C.Cir.1981);   Federal Rule of Civil Procedure 26 (Discovery), *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 224 Ct.Cl. 583 (1st Cir.1980); federal common law, *e.g., Riley v. City of Chester,* 612 F.2d 708 (3d Cir.1979);   state constitutional provisions, *e.g., State ex rel. v. Circuit Court, Branch 1,* 113 Wis.2d 411, 335 N.W.2d 367 (1983);   and state common law, *e.g., Senear v. Daily Journal-American,* 97 Wash.2d 148, 641 P.2d 1180 (1982).   Some jurisdictions limit application of the privilege to civil cases, *Senear, supra,* while others also extend it to criminal cases, *e.g., United States v. Burke,* 700 F.2d 70 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983).   In some cases, the privilege only covers confidential sources, *Senear, supra,* whereas in others it has been extended to limit the compelled disclosure of all information possessed by members of the news media, *e.g., United States v. Cuthbertson,* 630 F.2d 139 (3d Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981).   In criminal cases, the privilege has been held to be available when information was sought by the prosecution, *e.g., United States v. Blanton,* 534 F.Supp. 295 (S.D.Fla. 1982), or by the defendant, *e.g., United States v. Burke, supra.*   There is no specific set of criteria applied uniformly by all courts to determine whether the privilege precludes

---

**3.**   Historically, news reporters had no common law privilege to refuse to furnish evidence needed at a legal proceeding.   *See, e.g., Branzburg, supra,* 408 U.S. at 685, 92 S.Ct. at 2658; *In re Goodfader's Appeal,* 45 Haw. 317, 367 P.2d 472 (1961); *State v. Buchanan,* 250 Or. 244, 436 P.2d 729 (1968), *cert. denied,* 392 U.S. 905, 88 S.Ct. 2055, 20 L.Ed.2d 1363 (1968); Annot., 99 A.L.R.3d 37 (1980).

disclosure in a particular case. In most civil cases, courts which have found the privilege to exist have applied the four-part standard first set forth in *Garland v. Torre,* 259 F.2d 545 (2d Cir.1958), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958). In that case, the court considered the following factors prior to ordering the reporter to disclose her sources: (1) whether the information sought was relevant; (2) whether it went to the heart of the claim; (3) whether it was available from a nonmedia source; and (4) whether the plaintiff's cause of action was frivolous. There is considerably less uniformity among courts that have recognized the privilege in criminal cases. Generally, these courts have applied part or all of the three-prong test proposed by Justice Stewart in his dissenting opinion in *Branzburg, i.e.,* it must be shown that the reporter has relevant information, that this information is not available from an alternative nonmedia source and that the government has a compelling and overriding interest in its disclosure. *See Branzburg, supra,* 408 U.S. at 743, 92 S.Ct. at 2681.

## III.

■ WBAL urges us to hold that the First Amendment to the federal constitution and Article 40 of the Maryland Declaration of Rights [4] grant members of the news media a qualified privilege to withhold unpublished material obtained during the news gathering process from prosecutorial summons. In the view we take of this case, however, it is unnecessary to pass upon the question whether reporters have a qualified constitutional privilege, as claimed by WBAL. Assuming without deciding that such a qualified privilege exists, and that the three-prong test proposed by

---

4. Article 40 is *in pari materia* with the First Amendment. *Tofani, supra,* 297 Md. at 177 n. 4, 465 A.2d 413; *Lightman v. State,* 15 Md.App. 713, 727, 294 A.2d 149, *aff'd per curiam,* 266 Md. 550, 295 A.2d 212 (1972), *cert. denied,* 411 U.S. 951, 93 S.Ct. 1922, 36 L.Ed.2d 414 (1973).

WBAL is applicable, we find no error in the lower court's application of the test in the circumstances of this case.

■ The statements made by Grandsion clearly were relevant. Upon conducting its *in camera* review, the court found that the transcript of the interview contained an extensive discussion of the Warren House murders. In its brief, WBAL concedes that a substantial number of the statements made by Grandison in the interview relate to the slayings. Such statements are likely to bear on facts at issue in the case and therefore are relevant under Maryland law. *Dorsey v. State*, 276 Md. 638, 643, 350 A.2d 665 (1976).

Second, the trial court found that Grandison's statements were "not legally available anywhere else." WBAL contests this finding by maintaining that the State was required to attempt to obtain "the information" by interviewing Grandison before it could compel the station to turn over the video tapes. We disagree. Through its summons, the State was seeking the verbatim statements made by Grandison in that interview. Whether as direct evidence or for impeachment, the statements preserved on the video tape constituted voluntary admissions of a criminal defendant. What Grandison said during the interview could not be duplicated through subsequent questioning. Discussing outtakes of interviews with prosecution witnesses subpoenaed by the defense, the Third Circuit in *United States v. Cuthburtson, supra*, 630 F.2d at 148, said:

> "By their very nature, these statements are not obtainable from any other source. They are unique bits of evidence that are frozen at a particular place and time. Even if the defendants attempted to interview all of the government witnesses and the witnesses cooperated with them, the defendants would not obtain the particular statements that may be useful for impeachment purposes at trial."

WBAL is the sole possessor of recorded accounts of the interview. The only individuals present at the interview

were Grandison, the reporter and her cameraman. Not one of them is likely to remember the statements word for word. Moreover, it is unrealistic to expect Grandison to recount to the prosecutor any incriminating statements he might have made during the interview. Indeed, it is not without significance that Grandison later filed a motion to prevent use of the transcripts of the interview at trial. Therefore, we conclude that the lower court correctly found that the evidence was not otherwise available from nonmedia sources.

Last, the lower court found that the evidence could be "entirely new to the state" and related "to a matter that is of a compelling interest to the State of Maryland." WBAL contends that the court failed to make a finding as to whether the statements were necessary or critical to proof of the State's case. This is so, the station says, because the State failed to indicate what evidence it needed to strengthen its case. Thus, WBAL argues, the lower court "abdicated its judicial responsibility" to make a specific factual finding on whether the prosecution needed the video tape.

By requiring a showing that the evidence sought is necessary, critical or essential to the prosecution, the test proposed by WBAL does not obligate the State to prove that it would be significantly more difficult to convict the defendant without the evidence. Instead, cases cited by WBAL applying this prong of the test indicate that it is intended to focus the court's attention on the degree of relevance and the likely probative value of the evidence. *Bruno & Stillman, Inc. v. Globe Newspaper Co., supra,* 633 F.2d at 598 (relevance and importance of evidence sought is a factor); *United States v. Hubbard,* 493 F.Supp. 202, 205 (D.D.C. 1979) (evidence sought was not "necessary" because it was hearsay, cumulative and "not the best evidence"); *State v. Siel,* 122 N.H. 254, 444 A.2d 499, 503 (1982) (party seeking disclosure must show that information would be "helpful" because there is a "reasonable possibility" that it would affect the verdict); *Matter of Farber, supra,* 394 A.2d at 338 (party seeking disclosure must have a "legitimate need"

to see the evidence sought); *State v. St. Peter,* 132 Vt. 266, 315 A.2d 254, 256 (1974) (reporter must submit to deposition where the information is "relevant and material on the issue of guilt or innocence"); *Brown v. Commonwealth,* 214 Va. 755, 204 S.E.2d 429, 431 (1974) (information is essential if it is "material to proof of any element of a criminal offense, or to proof of the defense asserted by the defendant, or to a reduction in the classification or gradation of the offense charged, or to a mitigation of the penalty attached); *State ex rel. v. Circuit Court, Branch 1, supra,* 335 N.W.2d at 374 (information sought by defendant is "necessary" if it tends to support a defense theory). We conclude that the lower court's finding on this factor was correct. The court found that the material was directly relevant to Grandison's guilt or innocence. The recorded statements were not con-cerned with collateral matters but related directly to the facts surrounding the murders. Furthermore, as voluntary admissions of the defendant, the statements were highly probative. Hence, we conclude that the court did not abuse its discretion in finding that the State's strong interest in disclosure of all the legally admissible evidence available to it created a compelling need for the tapes.

■ WBAL complains that the State failed to specify which elements of its case the tapes would help prove. Thus, it claims, there is no showing that Grandison's state-ments go to the "heart of the matter at trial." We disa-gree. Since the State did not know what Grandison said in the interview, it is illogical to require it to identify the specific issues to which Grandison's statements related. WBAL seemingly would require the State to disclose its entire case to the court as a prerequisite to the court's determination of whether Grandison's statements go to the heart of the prosecution's case.[5] WBAL's position is not

---

5. Most of the cases which have applied the "heart of the claim" standard are civil cases where the issues, legal theories and relevant evidence have been distilled and clarified through pretrial discovery. Because discovery is more limited in criminal cases, it is far more

supported by the case law or by common sense. Accordingly, we find no error in the trial court's determination that a compelling need existed for Grandison's statements.

We conclude that the lower court correctly applied the three-part standard proposed by WBAL. As heretofore indicated, we do not decide whether reporters have a qualified privilege not to supply evidence relevant to a civil or criminal trial; nor do we decide whether to adopt the three-part test applied by the trial court to determine whether the need for this evidence has overcome any qualified privilege that might exist. We merely hold that there was no abuse of discretion in the lower court's ruling on the station's motion to quash.

Our opinion today does nothing to impair the freedom of the press in this State. The summons issued to WBAL sought one specific and clearly identified piece of evidence; it did not seek to rummage through the files of a news organization on a fishing expedition. *See Matter of Farber, supra,* 394 A.2d at 339. We are satisfied that the State has not sought the video tapes in bad faith for the purpose of harassing the press. *See Branzburg, supra,* 408 U.S. at 706, 92 S.Ct. at 2669. WBAL has been unable to articulate any threat to a free press posed by compelled production of the video tape in this case. Its vague and speculative claims of interference with the free functioning of the Fourth Estate are far outweighed by the public's overriding and compelling interest in the prosecution of an individual accused of a serious crime.

---

difficult for the court to apply this standard. The legal test urged by WBAL requires a capacity for prescience beyond the reach of most jurists.