636 A.2d 18

Steve **PENDERGAST**

v.

**STATE of Maryland.**

**No. 328, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Jan. 26, 1994.

142

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Victoria M. Burgess, Asst. Atty. Gen., Annapolis, on the brief), for appellee.

Argued before WILNER, C.J., and ALPERT and WENNER, JJ.

ALPERT, Judge.

Appellant, Steve Pendergast, appeals his conviction by jury verdict entered in the Circuit Court for Washington County (Wright, J.) on two counts of making threats to kill, kidnap, or inflict bodily harm on two circuit court judges.

The following question is presented:

Was the evidence sufficient to support appellant's convictions?

## Facts and Proceedings

The pertinent facts are not in dispute. Appellant is a prisoner in the Maryland Correctional Institution. In 1987 he was sentenced on separate convictions entered by Judge J.

Frederick Sharer and Judge Gary G. Leasure, both sitting in Allegany County, to a total of twenty-two years. The record shows that appellant subsequently mailed four letters to Judge Sharer. Based on two of these letters, one postmarked August 30, 1991, and the other postmarked March 23, 1992, appellant was indicted on four counts of making threats to State officials.

The August 1991 letter reads:

Judge Sharer & Leasure

About 4 yrs. ago, I received a 22 yr sentence in the two of your's court room.

I never received *No Justice*. So far my family & myself, have *suffered* very bad for your mistakes.

The state produced very little evidence against me, the witness & testimony against me was mostly lies in both cases, the women in which the State did cover up her *creditably* is still on a crime spree (Debbie Pifer)

I've never been in neither one of your court rooms for a crime. So why so much time for $1.25

The reason I'm writing this letter is because my family or myself have enough money to get back in court to get *Justice.*

But the whole point is, I do still have my right *MIND* to this day, I will also do every bit of time imposed upon *ME* for no *Justice,* If I don't receive Justice, I won't come out of this place in my right mind and I will also not be responsible for my actions, I hope & pray this is one chance we don't take.

Thank you

Steve Pendergast

P.S. Answer fast or

The March 1992 letter reads:

Judge Sheare [sic] & Leasure

If you don't think I will seek *"Revenge"* to the highest degree. All you have to do is keep this *Injustice* on ME.

I will NEVER change my mind unless I get justice, we'll see who hurts in the *END*

Thank you

Steve Pendergast

The State's evidence included testimony from Judge Sharer and Judge Leasure, regarding their reactions to the letters, and testimony from Sergeant W.D. Gray, regarding his interview with appellant at the Maryland Correctional Institution in Hagerstown. Both judges testified that they considered the language used in appellant's letters to be threatening. Sergeant Gray testified that appellant admitted to writing the letters and that appellant stated, "I wanted them to understand the pain and suffering that I was feeling."

At the close of the State's case, appellant's counsel moved for a judgment of acquittal on all counts. The court granted the motion as to counts three and four (the August 1991 letter), but denied the motion as to the remaining counts (the March 1992 letter). The defense rested without putting on any evidence and renewed its motion for judgment of acquittal. The jury convicted appellant on both remaining counts. Appellant received a sentence of three years, to run consecutively to the sentence he was already serving. This appeal followed.

### Discussion

 Appellant contends that the evidence was insufficient to support a conviction for making a threat to inflict bodily harm upon a State official. We disagree.

Appellant was convicted of making threats against state officials in violation of Article 27, section 561A of the Annotated Code of Maryland.

**§ 561A. Threats against State officials**

(a) **Definitions.**—(1) In this section the following words have the meanings indicated.

(2)(i) "State official" means a State official as defined in Article 40A, § 1–201(hh) of the Code.

(ii) "State official" includes the Governor, Governor-elect, Lieutenant Governor, and Lieutenant Governor-elect.

(3) "Threat" includes:

(i) A verbal threat; or

(ii) A threat in any written form, whether or not the writing is signed, or if it is signed whether or not the writing is signed with a fictitious name or any other mark.

(b) **Threats generally.**—A person may not knowingly and willfully make a threat to take the life of, kidnap, or inflict bodily harm upon a State official.

(c) **Sending or delivering threats.**—A person may not knowingly send, deliver, part with the possession of, or make for the purpose of sending or delivering a threat prohibited under subsection (b) of this section.

(d) **Penalties.**—A person who violates any provision of this section is guilty of a misdemeanor and upon conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $2,500 or both.[1]

Md.Ann.Code art. 27, § 561A (1957, 1992 Repl.Vol. & Cum. Supp.1993).

The legislative history of section 561A, enacted in 1989, reveals that it was patterned on a substantially similar provision in 18 U.S.C. § 871(a), which prohibits threats to take the life of or inflict bodily harm upon the President of the United States. As no Maryland cases construe section 561A, we will review the cases interpreting the similar Federal statute.

Appellant relies on the holding in *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), to support his contention that the evidence was insufficient in this case.

---

1. Article 40A, section 1–201(hh) of the Annotated Code of Maryland defines a "State official" as "a member or member-elect of the General Assembly, a judge or judge-elect of a court created by Article IV, Section 1 of the Constitution and a judicial appointee as defined in Maryland Rule 1232 or a constitutional officer or officer-elect in an executive agency of the State government" or "a person holding office as State's Attorney, clerk of the circuit court for each county, register of wills, [or] sheriff." Md.Ann.Code art. 40A, § 1–201(hh) (1957, 1990 Repl.Vol. & Cum.Supp.1993).

In *Watts*, the Court reversed a conviction for threatening the President, under 18 U.S.C. § 871(a), entered after a jury trial and based upon the following words uttered during a political rally:

> They always holler at us to get an education. And now I have already received my draft classification as 1–A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.

*Id.* at 706, 89 S.Ct. at 1401. The Court held that the trial court erred by denying the defense counsel's motion for a judgment of acquittal based on insufficiency of the evidence. In so holding, the Court emphasized:

> Certainly the statute under which petitioner was convicted is constitutional on its face. The Nation undoubtedly has a valid, even an overwhelming, interest in protecting the safety of its Chief Executive and in allowing him to perform his duties without interference from threats of physical violence. *Nevertheless, a statute such as this one, which makes criminal a form of pure speech, must be interpreted with the commands of the First Amendment clearly in mind. What is a threat must be distinguished from what is constitutionally protected speech.*

*Id.* at 707, 89 S.Ct. at 1401 (emphasis added) (citation omitted).

In *United States v. Barcley,* 452 F.2d 930 (8th Cir.1971), the U.S. Court of Appeals for the Eighth Circuit reversed a conviction under 18 U.S.C. § 876, a Federal statute prohibiting the mailing of a letter containing a threat to injure the person of the addressee, and directed a judgment of acquittal based on insufficiency of the evidence. The defendant had written a letter to his attorney that included the following language: "And you better listen to me and not at me you 'S.O.B.' because I am not playing your game. In point of fact, as soon as I can get this case situated around in the position I want *you are the first S.O.B. that will go, [the prosecutor] will [be] next." Id.* at 932 (emphasis added). While recognizing that this language could be construed as threatening injury,

the court noted that other interpretations were plausible. Emphasizing that the letter fell within the "purview of the First Amendment" and citing *Watts,* the court concluded that "the government must offer something more than the equivocal language present here to establish the communication of a threat." *Id.* at 933–934.

Nevertheless, in a case involving facts similar to those of the case on appeal, *United States v. Maisonet,* 484 F.2d 1356 (4th Cir.1973), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974), the court affirmed a conviction for mailing a threat to injure the person of the addressee, in violation of 18 U.S.C. § 876. Maisonet, a prisoner, mailed a letter to the judge who had sentenced him, stating, in part, "I may have to do all my ten (10) years, but if I ever get out of here and nothing happen[s] to me while I am in here, you will never be able to be prejudice[d] and racist against another Puerto Rican like me." *Id.* at 1357. In holding that the trial court's denial of the motion for judgment of acquittal was proper, the court stated, "[w]hether a letter that is susceptible of more than one meaning—one of which is a threat of physical injury—constitutes a threat must be determined in the light of the context in which it was written." *Id.* at 1358.

The Court of Appeals then identified the following facts which, taken together with the text of the letter itself, established that the government's proof was sufficient to withstand the motion for judgment of acquittal:

Maisonet had been sentenced to prison by the judge to whom he addressed the letter; he considered the sentence to be illegal; he charged that the judge was motivated by prejudice and racism; he addressed the letter to the judge's home; and he said nothing in the letter about having the judge investigated or about seeking his removal.

*Id.*

Although the court in *Maisonet* indicated its agreement with the dissenting opinion in *Barcley,* there has been no appreciable inconsistency in the approach taken by the two courts. Indeed, the U.S. Court of Appeals for the Eighth

Circuit has cited both cases with approval. *See, e.g., Martin v. United States,* 691 F.2d 1235, 1240 (8th Cir.1982) (holding that evidence was sufficient to withstand a motion for acquittal, where the threatening language was not ambiguous), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983).

Under the statutory provision at issue here, "[a] person may not knowingly and willfully make a threat to take the life of, kidnap, or inflict bodily harm upon a State official." Md.Ann. Code art. 27, § 561A(b). Maryland has a strong interest in protecting the safety of its public officials and in ensuring that they may perform their duties without being subjected to threats of physical violence.

■ Article 40 of the Maryland Declaration of Rights provides, "That the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects, being responsible for the abuse of that privilege." Md. Const., Declaration of Rights, art. 40. This provision is in *pari materia* with the First Amendment of the United States Constitution. *WBAL–TV Div., Hearst Corp. v. State,* 300 Md. 233, 243 n. 4, 477 A.2d 776 (1984).

■ The test for determining the sufficiency of the evidence to support a jury conviction is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *accord Williams v. State,* 329 Md. 1, 15, 616 A.2d 1275 (1992). Additionally, we conclude that because section 561A criminalizes pure speech and thereby implicates the free speech protections of the First Amendment and of Article 40 of the Maryland Declaration of Rights, Maryland courts, in ruling on a motion for judgment of acquittal, must narrowly construe the statute and determine whether the speech is a true threat.

Appellant contends that the March 1992 letter did not contain a threat to inflict bodily harm but was a protected

expression of his frustration at what he perceived as injustice. We disagree. Appellant's letter stated, "I will seek 'Revenge' to the highest degree." The ordinary meaning of the word, "revenge" is "to inflict damage, injury or punishment in return for (an injury, insult, etc.); to take vengeance for; to retaliate for." *Webster's New Twentieth Century Dictionary of the English Language* at 1550 (William Collins–World, 2d ed. 1975). The letter then stated, "we'll see who hurts in the *END.* " When viewed in the context in which it was written, the language used by appellant in the March 1992 letter constituted a threat to inflict bodily harm on the public officials to whom it was directed. Indeed, both Judge Sharer and Judge Leasure testified that they considered the contents of the letter to be threatening. It is important to note that (1) appellant directed the letter to the two judges who had sentenced him to imprisonment for a total of twenty-two years, (2) the letter was the last of four letters sent to these judges, and (3) the August 1991 letter also contained threatening language.

We conclude that the evidence was sufficient to establish that the language in appellant's March 1992 letter was a true threat to inflict bodily harm within the meaning of the statute. Thus, we hold that the circuit court correctly denied defense counsel's motion for judgment of acquittal. The judgment of the circuit court is affirmed.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.