650 A.2d 1362

**Andre Orlanto SHEPPARD**

v.

**STATE of Maryland.**

**No. 191, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Dec. 28, 1994.

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellee.

Submitted before WILNER, C.J., and MOYLAN and BISHOP, JJ.

MOYLAN, Judge.

Our disposition of this appeal is directly controlled by the significant change in the Maryland law of evidence effected by the Court of Appeals decision in *Nance v. State*, 331 Md. 549, 629 A.2d 633 (1993).

Prior to the *Nance* opinion, Maryland had been "one of only a handful of states to adhere to the orthodox rule barring use of prior inconsistent statements as probative evidence." 331 Md. at 565, 629 A.2d 633. If a trial witness had earlier given a statement inconsistent with the witness's later trial testimony, the prior statement was admissible only for the limited purpose of impeaching that witness's testimonial credibility. The jury was instructed to use the prior statement only for that purpose and not to consider its content for the truth of the matter asserted therein. In that capacity, a prior inconsistent statement was non-hearsay, offered only for the fact that the earlier inconsistent words had been uttered, the truth of the words being immaterial.

After a scholarly survey by Judge McAuliffe of the respective merits of the orthodox rule, the so-called "modern rule," and a moderated, intermediate version of the modern rule, the Court of Appeals, 331 Md. at 569, 629 A.2d 633, overruled

earlier Maryland case law and expressly adopted the moderated version of the modern rule:

> We hold that the factual portion of an inconsistent out-of-court statement is sufficiently trustworthy to be offered as substantive evidence of guilt when the statement is based on the declarant's own knowledge of the facts, is reduced to writing and signed or otherwise adopted by him, and he is subject to cross-examination at the trial where the prior statement is introduced. (footnote omitted).

Although the trial in this case occurred before the July 1, 1994 effective date of Maryland's recently adopted code of evidence, Title 5 of the Maryland Rules of Procedure, we note that new Rule 5–802.1(a) reflects the changes wrought by the *Nance* decision:

> The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:
>
> (a) A statement that is inconsistent with the declarant's testimony, if the statement was (1) given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition; (2) reduced to writing and signed by the declarant; or (3) recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement ...

The appellant, Andre Orlanto Sheppard, was convicted by a Montgomery County jury of assault with intent to murder, three counts of reckless endangerment, the use of a handgun in a crime of violence, and the carrying of a handgun. On this appeal, he raises the very significant contention

> that the trial judge erroneously refused to admit the prior inconsistent statements of two State's witnesses as substantive evidence and that he erroneously refused to instruct the jury that it might consider the prior inconsistent statements as substantive evidence.

Because it is necessary to reverse the convictions on the basis of that contention, three other contentions raised by the appellant are moot.

The facts in this case are simple. The evidence permitted a finding that, at approximately 7 A.M. on May 9, 1993, the appellant walked into a townhouse where Ralph George was sleeping and fired several shots at George with the intent to murder him. In the process, the appellant recklessly endangered several other persons as well. The State's key witness was the intended victim, Ralph George himself. One of the endangered guests in the townhouse that morning was Tina Rankin, whose testimony corroborated that of George.

Both Ralph George and Tina Rankin gave written statements to the police and selected the appellant's photograph from a photographic array. Their ultimate trial testimony was fully consistent with their earlier statements to the police and their identifications of the appellant as the armed assailant.

The factual wrinkle that this case adds to the *Nance* scenario is that the two ultimate witnesses at the trial gave not one pretrial version of the criminal episode but two. In the case of each witness, it was the second version that was inconsistent with the trial testimony. Both witnesses were interviewed by an investigator from the Public Defender's Office and both gave signed and written statements to the investigator. In her statement, Tina Rankin weakened significantly in her identification of the appellant as the gunman. She said that she was only forty-five percent sure of his identity. She said that she identified him only because of his skin color. She acknowledged that she did not really look at the gunman.

In his statement to the investigator, Ralph George stated that he did not believe the appellant was the gunman and that he could not honestly identify the appellant as his assailant. At trial, however, George explained that he made that statement to the investigator knowing it to be false because he wanted the prosecution to be dropped so that he could retaliate on the street.

Defense counsel sought to have those two statements made to the investigator introduced as substantive evidence, invoking the authority of the then recently decided *Nance v. State.* The judge ruled that the statements could not be admitted for their substantive content but only for the limited purpose of impeaching the testimonial credibility of the witnesses. Consistently with those rulings, the judge declined to instruct the jury that it could consider the two prior inconsistent statements for their substantive value.

The distinction between the posture of the prior inconsistent statements in this case and in the *Nance* case is a distinction without a difference. All of *Nance*'s preconditions for substantive admissibility were satisfied. Both witnesses testified at trial and both were subject to cross-examination concerning the earlier statements. Both earlier statements to the defense investigator were inconsistent with the trial testimony. Both statements to the investigator were based on the declarants' personal knowledge of the facts. Both statements were reduced to writing and signed by the declarants.

All of the conditions for admissibility being satisfied, it would make no difference whether a prior inconsistent statement be offered by the State or by the defense. It similarly would make no difference if the prior inconsistent statement be the first post-crime statement made by the witness or the thirty-first.

In *Nance,* 331 Md. at 565–566, 629 A.2d 633, Judge McAuliffe quoted with approval from C. McCormick, *The Turncoat Witness: Previous Statements as Substantive Evidence,* 25 Tex.L.Rev. 573, 577 (1947):

> [T]he witness who has told one story aforetime and another today has opened the gates to all the vistas of truth which the common law practice of cross-examination and re-examination was invented to explore. It will go hard, but the two questioners will lay bare the sources of the change of face, in forgetfulness, carelessness, pity, terror or greed, and thus reveal which is the true story and which the false. It is hard to escape the view that evidence of a previous inconsis-

tent statement, when the declarant is on the stand to explain it if he can, has in high degree the safeguards of examined testimony.

At retrial, the defense will be permitted to offer the prior inconsistent statements, as exceptions to the rule against hearsay, for their substantive content. The statements will also retain, moreover, their capacity, as non-hearsay, to rebut the testimonial credibility of the witnesses. As legitimate countermeasures, the State may then, if all predicate conditions are satisfied,[1] be permitted to introduce the prior consistent statements made to the police, first in their non-hearsay capacity, to rehabilitate the possibly impeached testimonial credibility. Assuming the preconditions have been satisfied, moreover, the State will also be permitted to offer the prior statements to the police, as hearsay exceptions, for their substantive content. Rule 5–802.1(b) provides that a statement is "not excluded by the hearsay rule" if it is

> a statement that is consistent with the declarant's testimony, if the statement is offered to rebut an express or implied charge against the declarant of fabrication, or improper influence or motive . . .

In *United States v. Allied Stevedoring Corp.*, 241 F.2d 925, 933 (2nd Cir.), *cert. denied*, 353 U.S. 984, 77 S.Ct. 1282, 1 L.Ed.2d 1143 (1957), Judge Learned Hand observed:

> It is one thing to put in a statement of a person not before the jury: that is indeed hearsay bare and unredeemed. But it is quite a different matter to use [it] when the witness is before the jury, as part of the evidence derived from him of what is the truth, for it may be highly probative to observe and mark the manner of his denial. . . . Again and again in all sorts of situations we become satisfied, even without earlier contradiction, not only that a denial is false, but that the truth is the opposite.

---

1. *See Cole v. State*, 83 Md.App. 279, 296–302, 574 A.2d 326, *cert. denied*, 321 Md. 68, 580 A.2d 1077 (1990).

Theoretically, there is no reason why a jury could not look upon a witness and consider his sworn testimony and then be presented with a smorgasbord of earlier versions of events given by that witness—some resolutely consistent with the trial testimony, some wildly inconsistent, and others at various points between.  Opposing counsel could then have a field day testing, probing, impeaching, and rehabilitating.  It would fall the ultimate lot of the jurors to choose on which, if any, version—or amalgam of versions—to bestow decisive weight and credibility.

*JUDGMENTS REVERSED;  COSTS TO BE PAID BY MONTGOMERY COUNTY.*