664 A.2d 469

**Macley DUMORNAY**

v.

**STATE of Maryland.**

**No. 2075, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 8, 1995.

362

Arthur A. DeLano, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kreg P. Greer, Assistant Attorney General, Baltimore (J. Joseph Curran, Jr., Attorney General, Baltimore and Andrew L. Sonner, State's Attorney for Montgomery County, Rockville, on the brief), for appellee.

Submitted before ALPERT, FISCHER and HARRELL, JJ.

ALPERT, Judge.

Macley Dumornay, appellant, was charged, in a twenty-one count indictment, with two counts of attempted murder and related offenses. Trial was held before a jury in the Circuit Court for Montgomery County on August 15–18, 1994 (McGuckian, J., presiding). The jury found appellant guilty of two counts of attempted second degree murder, two counts of assault with intent to maim, use of a handgun in the commission of a crime of violence, three counts of reckless endangerment, two counts of assault, two counts of conspiracy to commit an assault, breaking and entering, destruction of property, and injuring a dog. Appellant was sentenced to the Division of Corrections for eleven years. This appeal followed, wherein appellant asks the following two questions:

I. Did the court err in admitting the prior inconsistent statement of Anthony Ayi as substantive evidence?

II. Was the evidence sufficient to sustain appellant's conviction?

We hold that the trial court did not err in allowing Ayi's statement into evidence, and the evidence was sufficient to sustain the conviction. Thus, we affirm.

### Facts and Proceedings

According to the testimony of Aaron Smith, he invited several friends to his mother's house in Montgomery County to watch television on the evening of March 5, 1994. At

approximately midnight, four people arrived at Aaron's house. Aaron knew two of these people to be Miguel Cox and Christian Bagwell, but he did not know the other two people, who were later shown to be Anthony Ayi and appellant, Macley Dumornay. Because he did not know all of the people, Aaron told them all that they could not come into his mother's house. Aaron and Miguel Cox then got into a fight. While they were fighting, Aaron's older brother Derrick returned to the home with the family dog, a Rottweiler named Boss. Boss attacked the men with Cox as they were getting back into their car.

Aaron further testified that the following evening, around 9:00 p.m., someone knocked on the door of his mother's house. His brother Derrick was upstairs with his girlfriend, and Aaron had been downstairs with a friend. Aaron looked in the peephole of the door and saw "the same two guys [referring to Ayi and appellant] that was [sic] at my house the night before." The men began to kick in the door, and Aaron called for his brother to come downstairs. Before Derrick could get to the bottom of the steps, the men kicked in the door and Aaron saw one of the men draw a gun from his pants. Aaron and Derrick then ran into their mother's bedroom and closed the door. Gunshots rang out and bullets began to come through the walls, so Aaron and Derrick went into the bathroom. While there, they heard several more shots and then they heard Boss yelping.

On March 25, 1994, Anthony Ayi was arrested in connection with the shooting at the Smiths' house. Ayi gave a statement to police, explaining that he and Macley Dumornay, appellant, had participated in the shooting at the Smiths' house. This statement was tape-recorded by the police. Based on Ayi's statement, a physical line-up was put together on April 5, 1994. Aaron Smith viewed this line-up, and he selected appellant as one of the men who had been in his house on the night of the shooting. On April 15, 1994, a twenty-one count indictment was filed against appellant. At appellant's trial, Derrick Smith identified him as the man who had walked up the interior steps of the house with a gun on March 6th.

The State also called Anthony Ayi to testify at the trial. Defense counsel objected to this witness, arguing that the State knew Ayi would contradict his earlier statement and it could not call him as a witness just to impeach him with his prior inconsistent statement. The judge ruled that Ayi could testify and that any prior statements he made would be received as substantive evidence.

On the stand, Ayi admitted that he and appellant were friends, and he stated that they were together on the night of March 5th. He said that he, appellant, Miguel Cox, and Christian Bagwell had gone to the Smiths' residence that evening. He explained that neither he nor appellant knew the Smiths. Ayi related the events of that evening and explained that upon seeing the fight between Cox and Aaron Smith, Derrick Smith let the dog loose. Ayi said the dog then jumped into the car, attacking appellant, biting and tearing his brand-new tennis shoes. Ayi also testified that he did not see appellant at all on March 6th. He explained that he returned, alone, to the Smiths' residence on that evening. Ayi admitted that he had a gun with him and he explained that he burst into the Smiths' house, kicking in the door and shooting at the dog.

The prosecutor then questioned Ayi about an interview he had with the police after he was arrested in connection with the shooting at the Smiths' house. The prosecutor asked Ayi why he told the detective that he and appellant had gone back to the Smiths' house on the night of the shooting. Specifically, Ayi had told the detective that "Mac [the appellant] was with me." Ayi replied that he was confused at that point in the interview, and he thought the detective was referring to the evening of March 5th, when he, appellant, Cox, and Bagwell all went to the Smiths' house. The prosecutor continued pointing out instances throughout Ayi's interview with police when he used the word "we" when discussing the night of the shooting. For example, Ayi said that "we walked through the woods" to get to the Smiths' house, "we knocked on the door," "we kicked the door down," and "we got in the house." Furthermore, Ayi admitted that he had told the detective that

he kicked the door down and he and appellant entered the house.

The prosecutor also asked Ayi about his telling the detective the following: "[W]hat I said when we got in and they had ran [sic] upstairs, I was a little late going upstairs. I heard some shots, and that is why I ran upstairs because I thought, you know, they might have shot Macley or something." Ayi responded that he did not remember making that statement. The prosecutor also questioned Ayi about why he made the following statement to the detective:

So when I was going upstairs[,] that is when I seen [sic] the dog coming at me. Then I shot the dog. Then after I shot at the dog, I was—I turned around. I was on the stairs at the time. That is probably why you seen [sic] them [sic] shells on the stairs. I turned around. Then I seen [sic] Macley coming out holding his hand.

Ayi replied that he was talking about the night of March 5th, when he ran down the stairs outside the house. The prosecutor then asked, "Isn't it true [that] Detective Reed's next sentence was '[You saw Macley] [c]oming out of where?' and your response was 'the house holding his hand[.]' ... Then Detective Reed says okay, and your response is 'then we ran and left.' " Ayi responded, "Yeah, that is what it says."

Ayi's only explanation for why he told police that appellant was with him the night of the shooting was that he was confused during the questioning about whether the detective was asking about the first night he went to the Smiths' house or the second night. After the prosecutor concluded her questioning of Ayi, she then asked the court for permission to play the tape-recorded interview that Ayi had with Detective Reed after his arrest in connection with the shooting at the Smiths' home. Defense counsel noted an objection and then the tape was played for the jury.

At the close of the State's case, appellant moved for judgment of acquittal. This motion was denied. Appellant then took the stand in his own defense. He stated that he had gone to the Smiths' house on March 5, 1994, with Ayi and Cox.

He explained that Aaron Smith and Cox had gotten into a fight over some money. Appellant testified that as he was running to his car, the Smiths' dog came running after him, but did not bite him. Appellant denied returning to the Smiths' house the next day.

Based on the evidence, the jury convicted appellant of fifteen of the twenty-one counts. On December 14, 1994, Judge McGuckian sentenced appellant to the Division of Corrections for eleven years. This appeal followed.

## Admission of a Prior Inconsistent Statement

Appellant argues that the trial court erred in allowing the prosecution to introduce the prior inconsistent statement of Anthony Ayi as substantive evidence. The State argues that appellant failed to preserve this issue for review because, although he raised his objection to the admission of this evidence initially, he apparently abandoned his objection before the statement was actually admitted. We disagree with the State.

Prior to the time Ayi was called to the stand to testify, defense counsel objected to the State bringing in his prior statement as substantive evidence. The court was not persuaded by defense counsel's argument and allowed the prior inconsistent statement to be admitted as substantive evidence. In response to this ruling, defense counsel replied, "Your Honor, I would just like the Court to note my objection."

Ayi was then called to the stand and questioned about what happened on the evenings of March 5–6, 1994. His testimony about the night of March 6th contradicted his earlier statement to police. The prosecutor then used Ayi's previous statement to question him extensively about his earlier version of the incident. After the prosecutor finished asking Ayi questions, she asked the court if she could play the tape of the statement in its entirety for the jury. Defense counsel approached the bench and argued first, that the statement should not be admitted into evidence and second, that if the statement were allowed into evidence, certain parts of the tape

should be redacted and members of the jury should not receive a copy of the transcript of the tape. At the end of the bench conference, defense counsel concluded:

> I think an instruction can be given to the jury at the end, and they can be told that anything that [the prosecutor] read in the statement they can consider that as substantive evidence, but I don't think that it is appropriate to give them copies of the whole transcript or to play the whole tape for them.

Prior to the playing of the taped interview for the jury, defense counsel objected to starting the tape at the beginning because it was repetitive and did not contradict Ayi's trial testimony. The judge disagreed, ruling that in the interest of the jury's understanding, it was best to start the tape at the beginning. The tape was then played for the jury.

The State's contention that appellant failed to preserve this issue is based on its view that defense counsel waived her objection by explicitly stating that the jury could consider anything that the prosecutor read in the statement as substantive evidence. The State is wrong. Defense counsel duly noted her objection to Ayi's testimony before he was called to the witness stand and further noted her objection to the judge's ruling that Ayi's prior inconsistent statement would be received as substantive evidence. Defense counsel renewed her objection when, prior to the playing of the taped interview and after the statement that the State argues was a waiver of the objection, she again told that court that her first choice was that the tape not be played at all. Thus, it cannot be said that she waived her right to appellate review of this issue.

Having held that the issue of the admission of Ayi's taped statement was properly preserved, we address the merits of appellant's argument. Appellant contends that, generally, prior inconsistent statements are not admissible as substantive evidence. Although the Court of Appeals, in *Nance v. State*, 331 Md. 549, 629 A.2d 633 (1993), permitted the admission of prior inconsistent statements as substantive evidence if certain conditions are met, appellant asserts that the present case

goes beyond that holding. Appellant submits that the taped statement he gave to police does not have the necessary indicia of reliability because Ayi did not write, sign, or otherwise adopt the statement. Therefore, appellant contends, the statement was clearly inadmissible under *Nance*.

■ The State contends that Ayi's taped statement was correctly admitted under Rule 5–802.1(a), which was effective as of July 1, 1994 and provides that statements that were "recorded in substantially verbatim fashion by stenographic or electronic means contemporaneously with the making of the statement" are admissible.[1] Md. Rule 5–802.1(a) (1995). This argument is inaccurate. Rule 5–802.1 applies in trials held on or after July 1, 1994; however, for crimes committed prior to that date, no evidence may be admitted unless that evidence would have been admissible under the law and rules in effect on June 30, 1994. Because the crime in the instant case was committed on March 6, 1994, the question still remains whether Ayi's taped statement is admissible under *Nance*. We hold that it is.

The purpose behind the Court of Appeals's decision in *Nance* and the logical extensions that derive therefrom were discussed at length in the recent case of *Tyler v. State*, 105 Md.App. 495, 532, 660 A.2d 986 (1995). Judge Moylan explained that *Nance* illustrates the "decided liberalizing trend in the law of evidence favoring the freer admissibility of evidence." *Id.* at 532, 660 A.2d 986. He further noted that the spirit of *Nance* is to "prevent an undisputed 'turncoat'

---

1. Judge Moylan noted in *Sheppard v. State*, 102 Md.App. 571, 573, 650 A.2d 1362 (1994), that "new Rule 5–802.1(a) reflects the changes wrought by the *Nance* decision." In *Tyler v. State*, 105 Md.App. 495, 660 A.2d 986 (1995), Judge Moylan explained further the relationship between *Nance* and Rule 5–802.1. He noted that "*Nance*'s responses to the turncoat witness have since been brought together under the umbrella of the new Md. Rule of Evidence 5–802.1(a)," *id.* at 539, 629 A.2d 633, and that "Rule 5–802.1 [ ] essentially codifies the holding in *Nance v. State* [.]" *Id.* at 542, 629 A.2d 633. He further explained that "Rule 5–802.1(a), codifying *Nance v. State*, spells out explicitly what those 'particularized guarantees of trustworthiness' shall be in the case of a turncoat witness." *Id.* at 550, 629 A.2d 633.

from manipulating and impeding the processes of criminal justice." *Id.* at 552, 660 A.2d 986. Thus, this Court, as we did in *Tyler,* must again "take the basic principles and axioms announced by *Nance* and then, construing *Nance* liberally to serve its salutary purpose, [ ] 'push out the envelope' and explore the limits of *Nance* 's logic." *Id.* at 552, 660 A.2d 986.

In *Nance,* the Court of Appeals was faced with the problem of the "turncoat witness," a witness who makes one statement out-of-court and then repudiates that statement at trial. 331 Md. at 552, 629 A.2d 633. In such cases, a party often wants to bring in the witness's prior inconsistent statements as substantive evidence. Although the traditional, more orthodox approach was to bar the use of prior inconsistent statements as substantive evidence, *Sheppard v. State,* 102 Md.App. 571, 572, 650 A.2d 1362 (1994), the Court of Appeals in *Nance* chose to adopt an intermediate approach, allowing the use, in some instances, of prior inconsistent statements as substantive evidence. 331 Md. at 564–69, 629 A.2d 633. The Court adopted an option precisely suiting the facts of the *Nance* case; that is, the approach that had been codified by formal rule in Hawaii, by statute in Illinois, by case law in Connecticut and Pennsylvania, and by formal rule of evidence and judicial decision in New Jersey. 331 Md. 549, 568, 629 A.2d 633 (1993) (citing Haw.R.Evid. 802.1(1) (1992 Cum.Supp.); Ill.Ann.Stat. ch. 725, para. 5/115–10.1 (Smith–Hurd 1992); *State v. Whelan,* 200 Conn. 743, 513 A.2d 86, *cert. denied,* 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 598 (1986); *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992); *State v. Mancine,* 124 N.J. 232, 590 A.2d 1107, 1115 (1991)).

In *Nance,* 331 Md. at 569, 629 A.2d 633, the Court of Appeals held

> that the factual portion of an inconsistent out-of-court statement is sufficiently trustworthy to be offered as substantive evidence of guilt when the statement is based on the declarant's own knowledge of the facts, is reduced to writing and signed or otherwise adopted by him, and he is subject to cross-examination at the trial where the prior statement is introduced.

(Footnote omitted.) This holding was perfectly tailored to the facts of the case: three witnesses had been interviewed about events they had observed firsthand; the questions and their answers had been written down; each witness acknowledged the contents of the written statements and signed them; and the witnesses were present at trial for cross-examination.

The keystone of the *Nance* holding, however, is not that a statement must be "reduced to writing and signed or otherwise adopted by [the declarant];" rather, it is that an inconsistent out-of-court statement that is reduced to writing and signed or otherwise adopted is sufficiently accurate [2] and, therefore, may be offered as substantive evidence. *Id.* at 569, 629 A.2d 633. Upon review of the method by which the Court of Appeals arrived at its holding in *Nance,* and based upon a logical extension of that holding, we hold that a tape-recorded statement given by a declarant is also sufficiently trustworthy to be offered as substantive evidence of guilt, provided the statement is based on the declarant's own knowledge of the facts and the declarant is subject to cross-examination at the trial where the prior statement is introduced.

As mentioned earlier, the Court of Appeals relied on statutes, rules, and case law from other jurisdictions to arrive at its holding in *Nance.* The Hawaii Rule of Evidence on which the Court of Appeals relied in *Nance* reads, in pertinent part:

> The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule.

> (1) *Inconsistent statement.* The declarant is subject to cross-examination concerning the subject matter of his statement, the statement is inconsistent with his testimony . . . and the statement was

> (A) Given under oath subject to the penalty of perjury . . .; or

---

2. We do not here address the ability of a defendant to question the authenticity of the recording.

(B) Reduced to writing and signed or otherwise adopted or approved by the declarant; *or*

(C) *Recorded in substantially verbatim fashion by stenographic, mechanical, electrical, or other means contemporaneously with the making of the statement.*

*Id.* at 568, n. 7, 629 A.2d 633, (quoting Haw.R.Evid. 802.1(1) (1992 Cum.Supp.)) (emphasis added). The Illinois statute relied upon by the *Nance* Court reads, in pertinent part:

Admissibility of Prior Inconsistent Statements.

In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath ..., or

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

(A) the statement is proved to have been written or signed by the witness, or

(B) the witness acknowledged under oath the making of the statement ..., or

(C) *the statement is proved to have been accurately recorded by ... electronic means of sound recording.*

*Id.* at n. 8, (quoting Ill.Ann.Stat. ch. 725, para. 5/115–10.1 (Smith–Hurd 1992)) (emphasis added).

Moreover, the Court of Appeals relied on a case from Pennsylvania wherein the Pennsylvania Supreme Court held that a prior inconsistent statement of a non-party witness can be admitted as substantive evidence "only when it was given under oath at a formal legal proceeding; or the statement is reduced to a writing signed and adopted by the declarant; *or the statement is recorded verbatim contemporaneously with the making of the statement.*" *Lively,* 610 A.2d at 8 (emphasis added).

In the case of *Mancine*, 590 A.2d at 1115, also relied upon by the Court of Appeals, the Supreme Court of New Jersey was faced with a situation similar to the one in the instant case. Therein, a witness recanted at trial a taped statement that she had previously given to police. *Id.* 590 A.2d at 1113. The jury had been given a transcript of the taped statement to use as a listening aid while the tape was played for them. *Id.* The appellant challenged the admission of that taped statement as substantive evidence.

New Jersey Rule Evidence 63(1) provides that

[a] statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:

(a) Is inconsistent with his testimony at the hearing and ...; however, when the statement is offered by the party calling the witness it shall be admissible only if, in addition to the foregoing requirements, it

(i) *is contained in a sound recording* or in a writing made or signed by the witness in circumstances establishing its reliability or

(ii) was given under oath subject to the penalty of perjury....

*Id.* at 1115 (quoting N.J.R.Evid. 68(1) (1980)) (emphasis added). Not only did the Supreme Court of New Jersey hold that the taped statement was properly admitted under the rule of evidence, but the Court further held that a conviction could be sustained based only on the prior inconsistent statement; corroborative evidence was not necessary so long as the court was convinced that the statement could reliably be used to affix criminal responsibility. *Id.* at 1117.

The only authority cited by the Court of Appeals in *Nance* that did not mention the admissibility of taped statements was *Whelan*, 513 A.2d 86, and the facts of that particular case involved prior written inconsistent statements only. Thus, of the five authorities cited by the Court of Appeals in *Nance*, four of them specifically address the admissibility of taped

statements. Like *Whelan*, the facts of *Nance* did not involve a taped statement; rather, at issue was only a prior written statement. Thus, it was unnecessary for the Court of Appeals to make the holding broad enough to encompass taped statements.

It is a logical extension of the *Nance* holding that previously taped statements are also sufficiently trustworthy to be offered as substantive evidence of guilt when the statements are based on the declarant's own knowledge of the facts and the declarant is subject to cross-examination at the trial wherein the prior statements are introduced.[3] Accordingly, we hold that the trial court did not err in admitting Ayi's taped statement as substantive evidence.

### Sufficiency of the Evidence

■ Appellant argues that the evidence was insufficient to establish his criminal agency because the Smiths did not see the gunman on the night of March 6th and they based their identification of appellant on having seen him the evening before. The State contends that appellant failed to preserve this issue for review because defense counsel failed to renew her motion for judgment of acquittal at the close of the defense's case.

Maryland Code (1957, 1992 Rep. Vol), Article 27, section 593 provides:

> In the trial of all criminal cases, the jury shall be the judges of law, as well as of fact, except that at the conclusion of the evidence for the State a motion for judgment of acquittal on one or more counts, or on one or more degrees

---

3. In *Tyler*, 105 Md.App. 495, 660 A.2d 986, Judge Moylan noted that Maryland Rule 5–802.1(a) was not in effect at the time of the trial but that it merely "reflect[ed] the changes made in Maryland law by the *Nance* opinion." *Id.* at 539, 660 A.2d 986. He further explained that the witness's previous sworn testimony would be admissible under two separate rationales: (1) it was given under oath, subject to the penalty of perjury, at a prior trial, and (2) "[i]t was [ ] recorded in verbatim fashion by stenographic means at the very time it was given." *Id.* at 540, 660 A.2d 986.

of an offense, may be made by an accused on the ground that the evidence is insufficient in law to justify his conviction as to any such count or degree. If the motion is denied, he may offer evidence on his own behalf without having reserved the right to do so, but by so doing, he withdraws his motion. The motion may be made at the close of all the evidence whether or not such motion was made at the conclusion of the evidence for the State. If the motion is denied the defendant may have a review of such ruling on appeal.

Maryland Rule 4–324(a) provides, in pertinent part, that

[a] defendant may move for judgment of acquittal ... at the close of the evidence offered by the State and, in a jury trial, at the close of all of the evidence. The defendant shall state with particularity all reasons why the motion should be granted.

Md. Rule 4–324(a). In *Ennis v. State*, 306 Md. 579, 585, 510 A.2d 573 (1986), the Court of Appeals explained that Article 27, section 593 and Maryland Rule 4–324 "have been construed to preclude appellate courts of this state from entertaining a review of the sufficiency of the evidence, in a criminal case tried before a jury, where the defendant failed to move for judgment of acquittal at the close of all the evidence."

In the case *sub judice*, appellant failed to move for judgment of acquittal at the close of the evidence. Therefore, the State is correct that this issue was not preserved for our review. Nonetheless, even if appellant had moved for judgment of acquittal at the close of the evidence and properly preserved this issue for our review, his argument would not prevail.

▮ When reviewing a case on sufficiency of the evidence grounds, we must view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443

U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Pendergast v. State,* 99 Md.App. 141, 148, 636 A.2d 18 (1994).

In the instant case, both Aaron and Derrick Smith identified appellant as the man who came to their house on the evening of March 6th. Aaron selected appellant from a physical line-up as one of the men who had been in his house on the night of the shooting, and Derrick identified appellant at trial as the man who had walked up the interior steps of the house with a gun that evening. Furthermore, Ayi's taped statement indicated that appellant was with him on the night of the shooting, although he recanted this statement during his trial testimony. Viewing all of the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of criminal agency existed, beyond a reasonable doubt.

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.